IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 6181 |
| v. | ) |
| | ) Magistrate Judge |
| ANDREW SAUL, Commissioner of | ) Maria Valdez |
| Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Mary H.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to reverse or remand the Commissioner's decision is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 32] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 9, 2015, Plaintiff filed a claim for DIB, alleging disability since May 20, 2014 due to knee and back pain. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 28, 2017. Plaintiff personally appeared and testified at the hearing and was represented by a non-attorney representative. A vocational expert also testified.

On November 22, 2017, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 20, 2014. At step two, the ALJ concluded that Plaintiff had the following severe impairments: meniscal tear of right knee resulting in arthroscopy; degenerative tear of the acetubular labrum of right hip; and degenerative disc disease of the lumbar spine;

2

and the non-severe impairment of obesity. The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a listing. Before step four, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform work at the light exertional level with the following additional limitations: lifting/carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for about two hours and sitting for about two hours out of an eight-hour workday; standing and/or stretching for one to two minutes after sitting for one hour while remaining at her workstation; occasionally kneeling, crouching, crawling, and climbing ramps and stairs, but never climbing ladders, ropes, and scaffolds, and avoiding concentrated exposure to unprotected heights.

At step four, the ALJ concluded that Plaintiff would be able to perform her past relevant work as a loan officer and branch manager, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff

presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its

judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors

5

his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) her step three analysis was not based on substantial evidence; and (2) her RFC finding relied on her lay interpretation of the medical evidence.

#### A. Step 3

At step 3, an ALJ discerns "whether the claimant's impairments are 'severe enough' to be presumptively disabling—that is, so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary." *Jeske v. Saul*, -- F.3d --, 2020 WL 1608847, at *4 (7th Cir. Apr. 2, 2020); 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience."); *see also* 20 C.F.R. § 404.1525(a) ("The Listing of Impairments (the listings) . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."). Plaintiff contends that the ALJ failed to properly analyze her impairments at step 3 under two separate listings, 1.02 (major dysfunction of a joint due to any cause) and 1.04 (disorders of the spine).

With regard to both listings, the ALJ concluded that "[t]he medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (R. 61.)

### 1. *Listing 1.02*

Plaintiff contends that her knee and hip pain meet the elements of listing 1.02, which describes major dysfunction of a joint:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A.

An inability to ambulate effectively is defined in the regulations as:

> (1) . . . an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities,

7

> such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App., 1 § 1.00B2b.

According to Plaintiff, the ALJ's brief analysis of the listings was insufficient as a matter of law. *See Jeske*, 2020 WL 1608847, at *4 ("When evaluating whether an impairment is presumptively disabling under a listing, the ALJ 'must discuss the listing by name and offer more than a perfunctory analysis of the listing.'"). A conclusory discussion at step 3 does not by itself require remand, however, as long as the necessary analysis was included elsewhere in the decision. *See id.*, at *4-5 ("[W]hen an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And, as we've already recognized, '[t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant.'").

In support of her claim that she meets listing 1.02, Plaintiff argues that she had severe knee and hip pain, with objective findings of swelling, crepitus, reduced range of motion, abnormal gait, an MRI suggesting a possible tear in her right knee, an MRI showing hypertrophic changes, narrowing of the femoral acetabular joint space, and a partial thickness tear in the hip. As evidence of her inability to ambulate effectively, she points to the fact that "she has been observed to walk with a cane throughout the record," she wore a knee and hip brace, and she had severe difficulty with community ambulation.

8

The Commissioner responds that the regulations require that the impairment meet all of a listing's criteria, and Plaintiff's argument only relates to portions of the listing. *See Jeske*, 2020 WL 1608847, at *6; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Specifically, the Commissioner contends that Plaintiff has not shown an inability to ambulate effectively, and further that both State agency consultants considered listing 1.02 and determined that Plaintiff's impairments did not meet the criteria.

Throughout the decision, the ALJ gave examples of Plaintiff's inconsistent use of an assistive device or otherwise referred to Plaintiff's ability to ambulate effectively, and Plaintiff has not pointed to any evidence that she required the use of an assistive device that used both upper extremities, or that she was otherwise unable to carry out routine ambulatory activities. Furthermore, the State agency physicians also considered both listings but did not find she met the criteria. *Cf. Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("[T]he ALJ never consulted a medical expert regarding whether the listing was equaled. Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."). Plaintiff therefore has failed to show that the ALJ's analysis of listing 1.02 was not supported by substantial evidence.

### 2. *Listing 1.04*

Plaintiff next maintains that her back pain meets the criteria of listing 1.04:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,

9

> facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Plaintiff lists a number of medical findings with respect to her spine and discusses back pain she experienced at various times. She has not, however, pointed to specific medical evidence and tied that evidence to all necessary criteria of the listing. The Court will not undertake the effort on her behalf to connect the dots between the evidence and the elements of listing 1.04.

### B. Residual Functional Capacity

According to Plaintiff, the ALJ's RFC determination relied upon her own lay interpretation of the medical evidence and lacked a logical bridge between the evidence and her conclusions. First, the ALJ gave some weight to the opinions of the State agency medical opinions, but those opinions did not consider evidence of Plaintiff's hip impairment and surgery. Second, the ALJ gave great weight to the

10

opinion of Dr. Nikhil Verma, who performed an independent medical examination, which took place on September 8, 2014, before Plaintiff reinjured her knee on October 27, 2014. Moreover, the ALJ crafted a different RFC than that recommended by any of these medical opinions.

      The State agency consultants opined that Plaintiff could perform light work with reduced postural activities. The ALJ stated that these opinions were only given some weight, based on other opinions that limited her to seated work activity. Dr. Verma diagnosed Plaintiff with right knee strain and possible meniscal tear and stated that she had not reached maximum medical improvement. Given the failure of more conservative treatment, he recommended a diagnostic arthroscopy and likely meniscectomy with physical therapy thereafter. In his opinion, Plaintiff should be limited to working primarily in a seated position, walking and standing only one to two hours per day, on an intermittent basis. (R. 322.) The ALJ stated that Dr. Verma's "finding of a limitation to standing and walking only 2 hours of the day is adopted," which she believed to be "a generous finding given her recovery," and concluded that it accommodated her greatest impairments, even though they were only temporarily limiting. (R. 65.)

      The ALJ failed to build a logical bridge between the evidence and her RFC determination, because none of the medical experts on which she relied had access to all relevant evidence in the record. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (finding the ALJ's failure to submit "potentially decisive medical evidence" to a consulting physician and choice to "[i]nstead, play[ ] doctor (a clear

11

no-no, as we've noted on numerous occasions . . .)" required remand). In addition, the opinion of Dr. Verma, which was central to the decision, limited Plaintiff to walking or standing only one to two hours, but the RFC allows Plaintiff to stand a full two hours. The ALJ did not adequately explain why she chose the top end of the range; her conclusion that Dr. Verma's limitations were "generous . . . given her recovery" is not supported by any medical opinion and seems to be based on the ALJ's lay opinion that she has improved since the opinion was rendered. In any event, the reason for this determination is not explained, and thus this Court cannot evaluate the ALJ's rationale.

The ALJ also did not fully explore Plaintiff's subjective complaints of pain. She seemed to conclude that the lack of objective medical evidence, without more, belied Plaintiff's claim that she suffers disabling pain. However, it is well settled that pain allegations cannot be dismissed merely because of the lack of objective findings. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("The administrative law judge's most serious error, one we've noted in previous cases . . . is her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests."); *see also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010) (explaining that even where pain appears to be disproportionate to the medical evidence, "[a]s countless cases explain, the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to determine what is causing her pain that she is faking it").

12

Finally, the ALJ should have discussed Plaintiff's use of a cane and whether its use should have been included in the RFC. The ALJ emphasized that Plaintiff was not prescribed a cane, but a cane does not require a prescription. *See Parker*, 597 F.3d at 922. A proper analysis would have centered on whether a cane was needed, prescribed or not, and if so, whether a cane requirement would affect Plaintiff's RFC and thus the availability of jobs.

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken to ensure that the opinions of Plaintiff's treating physicians be fully discussed as required under the regulations. The ALJ is cautioned that treatment lasting only a short duration is only one factor to be considered and is not a reason to wholly discount a physician's findings.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to reverse or remand the Commissioner's decision is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 32] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**            **ENTERED:**

**DATE:**    **June 24, 2020**            _____
                                                             **HON. MARIA VALDEZ**
                                                             **United States Magistrate Judge**